Filed 8/16/21  In re A.M. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY, CHILDREN & FAMILY SERVICES BUREAU,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.W. et al.,<br><br>    Defendants and Appellants. | A161780<br><br>(Contra Costa County Super. Ct. No. J18-00432) |

J.W. (mother) and M.M. (father) appeal an order terminating their parental rights to A.M., their now three-year-old daughter and selecting adoption as the child's permanent plan under Welfare and Institutions Code section 366.26.[1] Mother contends the trial court erred in applying the parental benefit exception (§ 366.26, subd. (c)(1)(B)(i)). Father joins mother's argument and contends that if the order is reversed as to her, it must be reversed as to him as well. We find no error and affirm the order terminating parental rights.

_____

[1] All statutory references are to the Welfare and Institutions Code.

## Background

In April 2018, the Contra Costa County Children and Family Services Bureau (the bureau) filed a dependency petition alleging that at the time of A.M.'s birth, both she and her mother tested positive for methadone, benzodiazepines and oxycodone. A.M. suffered from significant drug withdrawal symptoms and remained in the hospital for almost two months. In June 2018, the court found that A.M. came within the meaning of section 300, subdivision (b), based on mother's substance abuse. At the dispositional hearing held later that month, A.M. was placed with her maternal grandparents. By December 2018, the court found that mother had been maintaining her sobriety and A.M. was returned to her custody.

In January 2020, the bureau filed a supplemental petition seeking to move A.M. to a more restrictive placement. The petition alleged, among other things, that the parents had been involved in three domestic violence incidents in 2019 and that the parents continued to violate prior court orders that prohibited them from having contact with each other. The court approved the emergency placement of A.M. with her maternal grandparents and sustained the allegations of the supplemental petition.

At the dispositional hearing on the supplemental petition, the court terminated reunification services for both parents and set a section 366.26 hearing.[2]

The section 366.26 hearing took place on November 19, 2020. The social worker's report, admitted into evidence at the hearing, indicated that since

---

[2] It does not appear that mother filed a writ petition challenging the setting of the section 366.26 hearing. Father's writ petition, which challenged the reduction in the frequency of his visitation after termination of reunification services, was denied by this court. (*M.M. v. Superior Court* (A160676, Nov. 10, 2020) [non. pub. opn.].)

2

late July 2020, mother had visited A.M. consistently, twice monthly, for one hour per visit. The social worker described mother as "always attentive and engaging in her efforts to meet [A.M.'s] needs (i.e., changing her diaper, feeding her, holding her, playing with her)" and reported that A.M. enjoyed the time spent with her mother. Mother asserted the parental benefit exception to the termination of her parental rights. She argued that she and A.M. were bonded, but did not testify or offer other evidence in support of her argument. The court found that mother's relationship with A.M. did not outweigh the benefits of permanence with an adoptive family and terminated the mother's and father's parental rights.

Both parents timely filed a notice of appeal.

## Discussion

The purpose of the section 366.26 hearing is to select a permanent plan for the child after reunification efforts have failed. (§ 366.26, subd. (b); *In re Marilyn H*. (1993) 5 Cal.4th 295, 304.) Adoption, where possible, is the permanent plan preferred by the Legislature for a dependent minor child who has not been returned to the custody of his or her parents and is found by the court to be adoptable. (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 573.) When the court finds that a child is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless "the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason." (*In re Caden C*. (2021) 11 Cal.5th 614, 630 (*Caden C*.).)

Here, mother contends the court erred in finding that the "parental-benefit" exception does not apply. (§ 366.26, subd. (c)(1)(B)(i).) In *Caden C*. the court explained that for this exception to apply, a parent is required to show "(1) regular visitation and contact, and (2) a relationship, the

3

continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C., supra*, 11 Cal.5th at p. 631, italics omitted.) "The first element—regular visitation and contact—is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.' " (*Id.* at p. 632.) "As to the second element, courts assess whether 'the child would benefit from continuing the relationship.' [Citation.] Again here, the focus is the child. And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid.*, quoting *In re Autumn H., supra*, 27 Cal.App.4th at p. 576.) "Concerning the third element—whether 'termination would be detrimental to the child due to' the relationship—the court must decide whether it would be harmful to the child to sever the relationship and choose adoption." (*Id.* at p. 633.)

As to the first two elements, the substantial evidence standard of review applies. "The determination that the parent has visited and maintained contact with the child 'consistently,' taking into account 'the extent permitted by the court's orders' [citation] is essentially a factual determination. It's likewise essentially a factual determination whether the relationship is such that the child would benefit from continuing it." (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) "The third element—whether termination of parental rights would be detrimental to the child—is somewhat different. As in assessing visitation and the relationship between parent and child, the court must make a series of factual determinations. These may range from the specific features of the child's relationship with the parent and the harm that would come from losing those specific features to a

4

higher-level conclusion of how harmful in total that loss would be. The court must also determine, for the particular child, how a prospective adoptive placement may offset and even counterbalance those harms. In so doing, it may make explicit or implicit findings ranging from specific benefits related to the child's specific characteristics up to a higher-level conclusion about the benefit of adoption all told. All these factual determinations are properly reviewed for substantial evidence. [Citations.] [¶] Yet the court must also engage in a delicate balancing of these determinations as part of assessing the likely course of a future situation that's inherently uncertain. The decision is not the same as a determination whether to transfer the child from the custody of one caregiver to another, but it does require assessing what the child's life would be like in an adoptive home without the parent in his life. [Citation.] The court makes the assessment by weighing the harm of losing the relationship against the benefits of placement in a new, adoptive home. And so, the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Id.* at p. 640.)

Here, there is no dispute that A.M. is adoptable and that her maternal grandparents, with whom she has been placed on and off since birth, intend to adopt her. The social worker's section 366.26 report indicates that A.M. "engages easily with her prospective adoptive parents," who are "committed to providing a permanent, loving and stable home for her." The report opines that A.M. "appears comfortable in the care of her prospective adoptive parents, as she freely communicates her needs with verbal two word sentences and actively show[s] prospective adoptive parents what she wants.

She is building a close reciprocal relationship with her prospective adoptive parents and appears to feel a secure and trusting bond."

The record establishes that mother has maintained regular visitation with her daughter sufficient to satisfy the first requirement for application of the exception. Although mother did not testify or offer any witnesses on her behalf, the social workers' reports provide some evidence that mother has a positive, loving relationship with her daughter. Early in the proceedings the social worker reported that A.M. "appeared bonded with [mother] during visits as evidenced by her watching, smiling, playing, kissing and reaching for [her] when in [her] presence." After A.M. was returned to mother's care, the social worker observed that A.M. "appeared happy and bonded with mother, as evidenced by her positive interactions with mother." The section 366.26 report submitted by the social worker confirms that A.M. "enjoys the time spent" with her mother. Presumably, continuing that relationship would be of some benefit to A.M.

The record is devoid, however, of evidence regarding how the severance of that relationship would harm A.M. As the court in *Caden C. supra*, 11 Cal.5th at page 636 explained, it is the parent's burden to establish by a preponderance of the evidence that terminating the child's beneficial attachment to her parent "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." Mother, however, did not testify at the section 366.26 hearing or present any other testimony from expert witnesses, service providers, family or friends to support a finding that termination of her relationship with her daughter would be detrimental. Nor did she request a bonding study be completed. (See *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339 [failure to request bonding study waives contention that the juvenile court should have required

6

a bonding study before terminating his parental rights].) Accordingly, mother did not satisfy her burden and the trial court did not abuse its discretion in concluding that any potential harm to A.M. from the loss of her relationship with her mother was outweighed by the benefits of a permanent placement with her grandparents.

## Disposition

The order terminating parental rights is affirmed.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
TUCHER, J.